HEARD APRIL TERM. 1871.

## JOHNSTONE *vs.* CROOKS.

A creditor who received payments in Confederate currency has no right to have such payments reduced to the value of the currency in good and lawful money.

Where a Commissioner in Equity received payments in Confederate currency, on a bond payable to himself as Commissioner, he cannot repudiate his own acts in receiving such currency, and in an action on the bond in his own name, have the credits stricken out.

The constitutionality of the "Act to determine the value of contracts made in Confederate States notes, or their equivalent," approved March 26th, 1869, re-affirmed, and the provisions held applicable to a bond for the purchase money of land given to a Commissioner in Equity in 1862.

Action of debt on bond, by Silas Johnstone, Commissioner in Equity for Newberry District, against Thomas H. Crooks, tried at Newberry, November Term, 1869.

The bond was dated December 1st, 1862—was payable to the plaintiff as Commissioner in Equity, and was conditioned for the payment of $9,000, in two equal installments—one on the 1st December, 1863, and the other on the 1st December, 1864, with interest from date. The consideration was the purchase money of land sold by the plaintiff under a decree of the Court of Equity for partition. Credits signed by the plaintiff were entered on the bond as

follows: December 1st, 1862, $173.80; December 7th, 1863, $4,701; December 27th, 1863, $206.66.

The plaintiff appealed from the judgment of the Circuit Court, and the questions made by the appeal appear in the opinion of this Court.

*Fair, Jones,* for appellant:

The parties really interested are creditors of the intestate, whose. land was sold by the plaintiff for partition. The payments were made in Confederate currency. The plaintiff had no right to receive such currency, and the credits should be stricken out.—*Bailey* vs. *Bagley,* 19 Ala., 172; *Garthwarte* vs. *Wentz,* 19 Ala., 196; *Thomas* vs. *Thompson,* 19 Ala., 487. In these cases, payments in Confederate money to an attorney on a mortgage, were set aside, and the mortgage set up. See also *Alley* vs. *Rodgers,* 19 Gratt, 366.

Where a case is opened under the Ordinance of 1865, the true value only of the payments should be allowed.—*Botts* vs. *Crenshaw,* referred to in *Head* vs. *Tally,* 3 Law Times, 156.

The decree of 1862, for partition, was void, there being, at that time, no lawful government in the State.—*Ex parte Bibb,* Law Times, 35; *Coleman* vs. *Coleman,* 43 Ala., 204; *Snider* vs. *Snider,* 2 W. Va., 200; *Hall & Hall* vs. *Hall,* 2 Law Times, 34.

The Act to determine the value of contracts made in Confederate currency was not unconstitutional, and was applicable to this case.—*Neely* vs. *McFadden,* 2 S. C., 169; *Wallace* vs. *Harmon,* 2 S. C., 208.

*Carroll,* for respondent:

1. The ordinance of 27th September, 1865, applies to executory contracts only, and so has been repeatedly adjudged.—*Austin* vs. *Kinsman,* 13 Rich. Eq., 265; *Fluit* vs. *Nelson,* 15 Rich., 11.

2. The Confederate Treasury Notes accepted by the plaintiff as payment of so much money, satisfied to that extent the plaintiff's bond.

3. A bill, note, or other security, delivered by a debtor to his creditor, and accepted by the latter expressly as payment, discharges the debt, whatever may be its grade.— *Costello* vs. *Cave,* 2 Hill, 528; *Peters* vs. *Barnhill,* 1 Hill, 235; Chit. on Con., 839—note M.; *Sheehy* vs. *Mandeville,* 6 Cra., 264.

4. The note or bond of a third person, though for a less amount, if received by a creditor expressly as payment, will satisfy the debt.—*Eve* vs. *Mosley*, 2 Strob., 207 ; Chit. on Con., 821—note X.

5. The extraordinary price at which the land was bought by the defendant, Crooks, and the condition of the State and the currency at the date of his bond, all show that the price of the land had reference to the currency of Confederate Treasury Notes as the measure of value.

6. The orders in the suit for the partition of the land among the heirs of Glymph, justified the plaintiff, as Commissioner, in receiving from Crooks Confederate Treasury Notes towards payment of his bond.—*McPherson* vs. *Gray*, 14 Rich. Eq., 129.

7. In receiving Confederate Treasury Notes in part payment of so much of said bond, the plaintiff, as Commissioner, was not wanting in such care and caution as a prudent man under like circumstances would employ in the management of his own funds.— *Polock* vs. *Dubose*, 7 Rich. Eq., 23 ; *McPherson* vs. *Gray*, 14 Rich. Eq., 130 ; *Thorington* vs. *Smith*, (Sup. Court of U. S., Dec., 1868), 2 Law Times, 168.

8. An Act of the General Assembly which recites, or declares, mere matters of fact, and makes them binding evidence as against the parties to pre-existing contracts, is invalid and void, because it impairs the obligation of such contracts, and is, in substance and effect, a palpable assumption of judicial power.—Const. of 1868, Sects. 21 and 25 ; 2 Story Const., § 1385 ; Cooley's Const. Lim., 96 ; *Parmelee* vs. *Thompson*, 7 Hill, N. Y. Rep., 77, and note b., 80.

January 18, 1872. The opinion of the Court was delivered by

Moses, C. J. The first assignment of error in the charge of the Circuit Judge is his instruction to the jury, " that the payments in Confederate currency should stand as a credit for that many dollars on the bond."

It is scarcely necessary to refer to authority to shew that what the creditor takes and acknowledges as payment of his debt must be so considered, unless some fraud or imposition has been practised to induce him to receive, in lieu of his demand, that which was never intended to be accepted as an equivalent for it.

As well might one claim a restitution of his property because he had parted with it at less than the market value. If the transaction is free from circumvention, or influence of a character which

would vitiate it at law, it must stand as the considerate act of the parties, binding on both of them.

This recognized principle, it is claimed, cannot apply to a contract subject to the provision of the Ordinance of September 27th, 1865, entitled "An Ordinance to declare of force the Constitution and laws heretofore in force in this State," which allows "the true value and real character of the consideration of any contract entered into between the 1st day of January, 1862, and the fifteenth day of May, 1865," to be shewn, "so that such verdict or decree might be rendered as will effect substantial justice between the parties."

It has been decided in *Austin* vs. *Kinsman*, 13 Rich. Eq., 265, and in *Fluit* vs. *Nelson*, 15 Rich., 11, that the Ordinance only applied to executory contracts, and that, therefore, where part payment had been made in Confederate currency, the creditor is not entitled to have the amount of the payment reduced to its value in National currency. If the proposition so contended for by the plaintiff can prevail, what would prevent its extension to the recovery from a maker, by the payee of a note who had received the amount nominally due upon it in Confederate currency, of the difference between such currency and the legal tender notes of the United States?

The second ground of error charged involves the plaintiff in an attempt, through the aid of the Court, to repudiate his own act in accepting a depreciated currency in part payment of the bond. While an officer of the Court, the obligee and custodian of the bond, he credited the money received, and, after inducing the obligors to suppose that so much of it was extinguished, he now avers that his course was without right, "and that the payments should be stricken out."

Is he in a position to avail himself of such an advantage? The creditors and the parties interested in the estate for the benefit of which the bond was held, are not before the Court. Whatever may be their rights, (and in that regard we do not propose to intimate an opinion,) he can not ask of the defendants any abatement or diminution of the amount so credited, because received in Confederate notes.

The third ground alleged as error must be sustained. The constitutionality of the "Act to determine the value of contracts made in Confederate States notes, or their equivalent," approved March 26, 1869, 14 Stat., 277, was sustained by this Court in *Neely* vs. *McFadden*, 2 S. C., 169. The Circuit Judge further charged,

that if not repugnant to the Constitution of this State and of the United States, " it had no application to the contract proved in this case, and that, after fixing the real value of the property on the day of sale, and ascertaining what proportion of the original bond had been paid, and what proportion was still due, their verdict should conform to such proportion."

The rules by which the construction and determination of contracts made during the period when Confederate States notes constituted the only circulating medium in the State, have been fully prescribed and set forth in the cases of *Neely* vs. *McFadden*, 2 S. C., 169, and *Harmon* vs. *Wallace*, 2 S. C., 208.

They determine the principles which must be applied to the construction of such contracts, where, from the peculiar condition of the currency then prevailing, and the state of the country, the intent of the parties is allowed to be ascertained by a resort " to proof of extrinsic facts and circumstances," in aid of the inference to be drawn from the instrument itself.

The motion is granted, and a new trial ordered.

*Willard*, A. J., and *Wright*, A. J., concurred.